**WHITE CONSOLIDATED INDUSTRIES, INC., Plaintiff**

v.

**ISLAND KITCHENS, INC., Defendant.**

**Civ.A. No. 94–2477.**

United States District Court, E.D. Pennsylvania.

March 21, 1995.

Jestyn G. Payne, Kozloff, Diener, Payne & Fegley, Wyomissing, PA, for plaintiff.

Gregory J.F. Gleason, Paul Hollender, Corash & Hollender, P.C., Staten Island, NY, and Joel H. Merow, Reading, PA, for defendant.

### MEMORANDUM AND ORDER

HUYETT, District Judge.

The law firm of Corash & Hollender, P.C. of Scarsdale, New York, and local counsel, Gerber & Koestel of Reading, Pennsylvania ("Petitioners"), have moved the Court for leave to withdraw from representation, in this action, of Defendant Island Kitchens, Inc. The motion is supported by a memorandum of law and the affidavit of Paul Hollender, a partner in Petitioner Corash &

Hollender. Petitioners served the motion to withdraw on Plaintiff and Petitioners' client and it has not been contested. For the reasons discussed below, the Court will grant Petitioners' Motion to Withdraw.

## I. BACKGROUND

In the underlying action, Plaintiff White Consolidated Industries, Inc., a Delaware corporation with principal place of business in Berks County, Pa., has invoked the Court's diversity jurisdiction to sue Island Kitchens, Inc., a New York corporation with principal place of business in Staten Island, New York, for breach of a distributorship agreement. Plaintiff alleges Defendant took delivery of Plaintiff's products but failed to pay for them. Plaintiff seeks damages of the contract price of the items, $155,939.00 and $11,066.73 in interest.

Defendant Island Kitchens, Inc. has a single shareholder and officer, Joseph Cappadora, who appears to be a resident of New Jersey. Island Kitchens, through its principal Mr. Cappadora, initially retained Petitioner Corash & Hollender ("the Firm") on December 17, 1993 to assist in the sale of Island Kitchen's assets. Hollender Aff. ("Aff.") at 1. The "General Retainer Agreement" executed between Cappadora and Corash & Hollender provided "[i]n the event the Client requests the Firm to do additional work not presently contemplated by this agreement, the terms of this agreement shall become the contract for legal services for such additional work. . . ." Ex. A to Aff. at 2 ("Ex. A")[1]. The Firm subsequently undertook representation of Cappadora and Island Kitchens in this action and several suits being litigated in the state of New York. Aff. at 2. On August 4, 1994, Petitioner Corash and Hollender filed an answer, in this action, asserting counterclaims on behalf of Defendant Island Kitchens.

Cappadora's initial retainer check bounced. Ex. B. The retainer agreement stated that Cappadora agreed to pay "for all disbursements and expenses reasonably incurred by the Firm . . . as and when billed" and to maintain his account current at all times by "paying the most recent bill within 30 days from the statement date. . . ." Ex. A at 1. Cappadora was late with subsequent payments for services rendered and, by February of 1994, had accumulated an unpaid balance with the Firm of $3,955.00. Aff. at 2.

On February 11, 1994, Cappadora proposed a handwritten modification to the retainer agreement which the Firm accepted. Under the modification, Cappadora agreed to remunerate the Firm on an installment basis by making payments, every three weeks, of three to five hundred dollars. Ex. C. Cappadora subsequently defaulted on his obligations under the modification by making only two payments of $500 over the ensuing sixteen week period. Aff. at 3. In response to the Firm's demands for payment, Cappadora made payments of $3,000 and $1,000, respectively, in May and June, 1994. *Id.*

Cappadora failed to make any additional payments after June, 1994. *Id.* By August 31, 1994, Cappadora owed the Firm in excess of $20,000. During the first week of September, 1994, the Firm made several unsuccessful attempts to contact Mr. Cappadora by telephone. The retainer agreement states:

[I]n the event that Client fails to make any payment . . . within thirty (30) days after a bill is rendered (or such request is made), the Firm, upon notice to the Client, may declare this agreement terminated; and client hereby, in advance, authorizes the Firm to cease working on this matter and grants the Firm the authority to withdraw from the case.

Ex. A at 2. On September 7, 1994, the attorney working on Cappadora's legal matters sent him a demand letter stating:

Since you have not returned any of my calls, Paul Hollender has directed me to advise you that, unless we receive a payment in the amount of $2,500 by September 13, 1994, the firm will have no other recourse but to make an appropriate application to withdraw as your attorneys in

---

1. All subsequent references to exhibits refer to exhibits attached to the affidavit of Paul Hollender.

each of the legal actions in which it currently represents you.

Ex. E at 1. Corash & Hollender sent the letter by certified mail and it was received by Mr. Cappadora. The requested payment, $2,500, represented approximately 10% of Cappadora's then outstanding balance. Aff. at 4. Cappadora did not make any additional payments in response to the letter. *Id.*

On September 20, 1994, Corash & Hollender served the instant motion on Mr. Cappadora by certified mail. The motion was filed September 22, 1994, without a supporting affidavit or memorandum of law. At a telephone conference conducted September 29, 1994, the Court determined that Petitioner Corash & Hollender lacked status to proceed as it was in violation of Local Civil Rule 13. By Order dated September 30, 1994, the Court ordered Petitioner Corash & Hollender to obtain associate counsel admitted to practice before this Court, as required by Rule 13, and "file a memorandum of law and affidavit setting forth the legal and factual basis for its motion to withdraw." *White Consol. Indus., Inc. v. Island Kitchens, Inc.,* No. 94–2477 (E.D.Pa. filed October 5, 1994).

Corash and Hollender associated Petitioner Gerber & Koestel as local counsel on behalf of Island Kitchens and filed a memorandum of law and affidavit in support of the motion on October 19, 1994. As of October 18, 1994, the date the supporting documents were served on Mr. Cappadora, Cappadora owed the Firm $28,828.03. Aff. at 3; Ex. D.

In their memorandum, Petitioners state "Defendant Island is no longer providing any information necessary to defend this matter." Pet.Mem. at 2. Petitioners also state that in the time since they filed their motion to withdraw, "the Defendant has effectively ceased all operations having lost all of its assets and retail premises, and Mr. Cappadora has advised the Firm of his intent to file for bankruptcy relief...." Aff. at 5.

## II. DISCUSSION

■ The diversity between the domicile of the parties and counsel and the *situs* of this action presents the Court initially with the question of which state's law to apply in deciding whether to grant Petitioners' motion to withdraw. While the law of Pennsylvania, the forum state, may well apply to a contract for the sale of goods between Plaintiff and Defendant, it is not clear that Pennsylvania law should govern a motion to withdraw between New York counsel and a New York client. Pennsylvania choice of law rules, however, do control the choice of the applicable law. "In diversity cases, the choice of law rules of the district court's forum state are controlling." *Draper v. Airco, Inc.,* 580 F.2d 91, 97 (3rd Cir.1978) (*citing Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 494, 61 S.Ct. 1020, 1020–21, 85 L.Ed. 1477 (1941)).

■ On an issue involving a lawyer's professional responsibility, such as a motion to withdraw, the applicable choice of law rule is Rule 8.5 of the Pennsylvania Rules of Professional Conduct. This Rule states "[a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." Petitioner Corash & Hollender, although acting in Pennsylvania, is not "admitted to practice in this jurisdiction." In this situation, the Comment to Rule 8.5 explains:

> [L]awyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States.... If the rules of professional conduct in the two jurisdictions differ, principles of conflict of laws may apply.

Pennsylvania Rules of Professional Conduct 42 P.C.S.A. Rule 8.5 cmt.

The rules of professional conduct do differ between New York and Pennsylvania. As of April 1, 1988, Pennsylvania's Code of Professional Responsibility, based on the American Bar Association's ("ABA") Model Code of Professional Responsibility, was superceded by the Rules of Professional Conduct, premised on the more modern ABA Rules of Professional Conduct. *See Commonwealth v. Little,* 418 Pa.Super. 558, 614 A.2d 1146, 1149 (1992). New York's statutory ethics rules continue to be patterned on the Model Code. *See* N.Y.Code of Prof.Resp., DR 2–110, (22 NYCRR § 1200.15) McK.Consol.Laws, Book

29 App. Thus, the Court must look to the "principles of conflict of laws," as observed in Pennsylvania, to determine whether to evaluate the motion to withdraw under New York or Pennsylvania law.

■ In deciding conflict of laws questions, Pennsylvania follows section 6 of the Restatement (Second) of Conflict of Laws. *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 322 (1975). That section provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1969). In the situation presented by the instant motion, the interests of New York in regulating the conduct of attorneys practicing within its borders and the justifiable expectations of a New York client retaining New York counsel[2] that the professional standards of New York will govern the representation require that the Court decide the motion to withdraw by applying New York law.

■ Disciplinary Rule 2–110(C) of the New York Code of Professional Responsibility regulates an attorney's permissive withdrawal from employment. The relevant portions of that statute permit a lawyer to withdraw upon obtaining leave of court[3] "if withdrawal can be accomplished without material adverse effect on the interest of the client," or if the client:

a. Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law.

b. Persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent.

c. Insists that the lawyer pursue a course of conduct which is illegal or prohibited under the Disciplinary Rules.

d. By other conduct renders it unreasonably difficult for the lawyer to carry out employment effectively.

e. Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct which is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules.

f. Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

g. Has used the lawyer's services to perpetrate a crime or fraud.

N.Y.Code of Prof.Resp., DR 2–110(C)(1). Petitioners argue that they should be permitted to withdraw pursuant to DR 2–110(C)(1)(d) & (f), because Island Kitchens' has (1) deliberately disregarded its obligation to pay fees and maintain its account with Corash & Hollender current, as required by the general retainer agreement, and (2) rendered the representation unreasonably difficult by failing to return phone calls and answer certified letters, and by ceasing to provide information required to defend this suit. The Court agrees. In New York, a motion for withdrawal of counsel may be granted "where [defendant] failed to pay [its] legal fees and [has] been noncooperative with [its] counsel." *Charney v. North Jersey Trading Corporation,* 150 Misc.2d 849, 578

---

**2.** The facts show the legal services counsel was initially contracted to provide, assistance in the sale of Island Kitchen's assets, were to be performed in New York, as well.

**3.** If required.

N.Y.S.2d 100, 101 (N.Y.Sup.Ct.1991). Here, Island Kitchens has consistently failed to satisfy the obligations of the retainer agreement and has not made a payment to counsel since June, 1994. Despite its receipt, in September and again in October, 1994, of certified mail giving notice that counsel was allowed to withdraw under the terms of the retainer agreement, intended to seek leave to withdraw, or had in fact filed a motion to withdraw, Island Kitchens has continued to refuse to communicate with counsel.

New York's Code of Professional Responsibility requires:

> [A] lawyer shall not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

N.Y.Code of Prof.Resp., DR 2–110(A)(2). The timing of this motion to withdraw will not prejudice Island Kitchens rights in the present action. The matter has not yet been scheduled for trial, and no other motions are pending. Petitioners provided Island Kitchens with adequate notice of their intent to seek leave to withdraw, in the form of certified letters transmitted on September 7th and 20th, and October 17, 1994. Island Kitchens has had ample time to retain other counsel. The only requirement Petitioners must still satisfy is to deliver to Island Kitchens "all papers and property to which the client is entitled." Accordingly, the Court will grant Petitioners' motion to withdraw, subject to this condition.

## Ill. CONCLUSION

Because Defendant Island Kitchens has failed to satisfy its obligations to pay its attorneys' fees, as required by the retainer agreement entered into with Petitioners, and has rendered the representation unreasonably difficult by ceasing to provide information required to defend the underlying action, the Court grants Petitioners' motion to withdraw. Petitioners may withdraw, subject to the condition that they deliver to Island Kitchens all papers and property to which Island Kitchens is entitled under New York law.