**Liberty Mobility Link v Port Auth. of N.Y. & N.J.**

2024 NY Slip Op 33583(U)

October 8, 2024

Supreme Court, New York County

Docket Number: Index No. 151814/2024

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** <u>HON. LYLE E. FRANK</u> | **PART**       **11M** |
| *Justice* | |

-----------------------------------------------------------------------------------X

LIBERTY MOBILITY LINK,

                              Petitioner,

                   - v -

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, DCCA1, INC.

                           Respondent.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 151814/2024 |
| **MOTION DATE** | 02/28/2024, 02/28/2024, 04/25/2024 |
| **MOTION SEQ. NO.** | 001 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 20, 22, 23, 26, 29, 56, 60, 65, 70, 71, 110, 114

were read on this motion to/for       <u>ARTICLE 78 (BODY OR OFFICER)</u>.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 16, 21, 24, 25, 27, 30, 31, 32, 33, 57, 61, 66, 69, 72, 92, 111, 115

were read on this motion to/for       <u>DISCOVERY</u>.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 58, 62, 67, 73, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 112, 116, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134

were read on this motion to/for       <u>DISMISS</u>.

       Upon the foregoing documents, the petition is denied.

## **Background**

       This petition arises out of a dispute over the awarding of contracts following a Request for Proposal ("RFP") for the design, construction, operation and maintenance of a new AirTrain System at Newark Airport. The two main issues this petition raises are the validity of the denial of two Public Records requests as well as the denial of their respective appeals, and if certain aspects of the evaluation of one of the bidders on the RFP were conducted in an arbitrary and capricious manner.

**151814/2024 LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Motion No. 001 002 003**

**Page 1 of 18**

1 of 18

[* 1]

## I: The RFP Process and Aftermath

Petitioner Liberty Mobility Link ("Liberty") and Respondent DCAA1, Inc. ("Doppelmayr"), both submitted proposals for the new Newark Airport AirTrain system when Defendant Port Authority of New York and New Jersey ("the Port Authority") issued the RFP. Alstom, the current provider for the AirTrain system at Newark, is an entity under Liberty's umbrella. The Port Authority's process of reviewing the RFP submissions has two main stages. First, the proposals are considered by the Technical Evaluation Subcommittees, a process which awards the proposal a score based on variously weighted components and culminating in a vote on the best technical proposal. Then, the voting committee reviews the evaluations of the price proposals. These evaluations, along with the technical proposals, are considered along with the Chief Advisory Review Team. The resulting Best Value Recommendation is presented to the Port Authority's Executive Director. Finally, the Port Authority's Board of Commissioners vote on the final contract award.

The Port Authority announced their decision to award the contract to Doppelmayr on December 14, 2023. Four days later, Liberty submitted two Public Records Requests to the Port Authority requesting information regarding the evaluation of Liberty's and Doppelmayr's submitted proposals. These requests were denied by the Port Authority and Liberty appealed this denial on January 12, 2024. Liberty had filed a separate, second request for Public Records on December 29, 2023. This second set was also denied. On January 24, 2022, Liberty filed an appeal of the second denial. This appeal was likewise denied on February 7, 2024.

### I.A: The Debriefing Conference

Meanwhile, on December 21, 2023, there was a debriefing conference between Liberty and the Port Authority. At the conference, Liberty alleges that certain comments were made

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 2 of 18

2 of 18

suggesting that Liberty's technical proposal was downgraded based on problems with the existing Newark monorail in winter and that costs were added to Liberty's price proposal during the evaluation. The Port Authority alleges that during this conference, Liberty was told that their proposal had offered limited details, and that Liberty did not always respond or respond adequately to requests for clarification. The Port Authority alleges that Liberty was informed of seventeen "significant deficiencies" in their proposal and that Liberty was told how their proposal had failed to adequately meet certain RFP guidelines. The Port Authority also denies that Liberty was told that their technical proposal was evaluated regarding current AirTrain winter weather issues, merely that the proposals for the new system were expected to address concerns regarding winter weather operation. On January 3, 2024, Liberty filed a bid protest opposing the contract award to Doppelmayr which the Port Authority denied. Liberty filed an appeal of the protest decision, which was likewise denied.

## II: The Present Litigation

Liberty commenced a timely Article 78 proceeding on February 28, 2024, alleging that the denial of the records request and the awarding of the contract to Doppelmayr were arbitrary and capricious. There are two causes of action: 1) that the Port Authority violated N.Y. Public Officers Law §§ 84-90 and the Port Authority's Public Records Access Policy in denying the records requests, and 2) that the Port Authority's decision to uphold the Protest Decision (and, consequentially, the decision to award the contract to Doppelmayr) was arbitrary and capricious, an abuse of discretion, and affected by an error of law. Liberty alleges, among other things, that the Port Authority "went outside its RFP to evaluate Liberty only" and that the price valuation of Liberty's proposal was arbitrarily and capriciously conducted. Since the filing of the petition, the Port Authority has turned over some of the documents requested by Liberty.

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Motion No.  001 002 003**

**Page 3 of 18**

3 of 18

[* 3]

Liberty seeks orders from the Court declaring the record request denials arbitrary and capricious, compelling the Port Authority to produce "all public records regarding the RFP and evaluation process", assessing reasonable attorney's fees and costs, and scheduling an evidentiary hearing before the Court after Liberty has had the chance to examine the disclosed public records. Importantly, Liberty also requests an order declaring the contract awarded to Doppelmayr void, the protest decision vacated, and the matter remanded to the Port Authority. Liberty also filed a simultaneous motion for leave to conduct expedited discovery.

Both Respondents have filed motions to dismiss. Respondent Doppelmayr filed a motion to dismiss the complaint as to them on the grounds that New York lacks jurisdiction over Doppelmayr. Respondent Port Authority filed this present motion to dismiss the petition pursuant to CPLR § 3211, on the grounds that the claims are "contrary to the evidence and fail as a matter of law" and that there is no basis for the relief sought. [1]

## Standard of Review

Under CPLR § 7803(3), a court may vacate an agency's determination if it was "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." "The petitioner has the burden of establishing that the actions of the agency were arbitrary and capricious." *Royal Realty Co. v. New York State Div. of Housing and Community Renewal*, 161 AD2d 404, 405 [1st Dept 1990]. A court cannot interfere "unless there is no rational basis for the administrative action, or the action complained of is arbitrary or capricious." *Id.* An action is arbitrary if it is "without sound basis in reason and is generally taken without regard to the facts." *Pell v. Board of Education*, 34 NY2d 222, 231 [1974].

---

[1] Although Respondent cites to CPLR § 3211 as grounds for their motion to dismiss, the Court deems the motion an opposition to the underlying petition.

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**       **Page 4 of 18**
**Motion No.  001 002 003**

A court can overturn an administrative action only if the record illuminates there was no rational basis for the decision. *Id.* "Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard." *Id.* If the court reviewing the determination finds that "[the determination] is supported by facts or reasonable inferences that can be drawn from the records and has a rational basis in the law, it must be confirmed." *American Telephone & Telegraph v State Tax Comm'n* 61 NY2d 393, 400 [1984].

It is well established that the court should not disturb an administrative body's determination once it has been established that the decision is rational. See *Matter of Sullivan Cnty. Harness Racing Ass'n, Inc. v Glasser*, 30 NY2d 269 [1972]; *Presidents' Council of Trade Waste Assns. v New York,* 159 AD2d 428, 430 [1st Dept 1990].

### Discussion

Liberty has failed to establish that their underlying petition can succeed because they have failed to establish that the Port Authority acted in a way that was arbitrary and capricious, lacked a rational basis, or affected by an error of law.

The Port Authority largely opposes Liberty's claims on the grounds that they fail as a matter of law. Specifically, the Port Authority argues that the first claim fails because the Port Authority had a reasonable basis to deny Liberty's documents requests and that the second claim fails because they did not deviate from RFP guidelines as regarding Liberty's proposal. Given that some of Liberty's factual allegations are clearly contradicted by documentary evidence, and that Liberty cannot establish an enforceable right to recovery as pled for the FOIL requests, their petition fails.

### I: Liberty's Raising of New Facts and Issues in the Reply Memorandum

**151814/2024  LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Page 5 of 18**
**Motion No.  001 002 003**

[* 5]

5 of 18

One of the Port Authority's arguments must be addressed at the outset. In their Reply Memorandum of Law, the Port Authority claims that Liberty impermissibly introduced new facts and issues in its own Opposition Memorandum of Law. The Port Authority alleges that these new issues are an improper amendment of the initial Petition, as Liberty did not comply with the requirements of CPLR § 3025(b). Specifically, the Port Authority argues that Liberty has "largely abandon[ed] the factual predicate underlying its initial claim" and created a new basis for their claim based on the documents produced by the Port Authority. The main differences are that while in the verified petition Liberty alleges that the Port Authority improperly considered the current AirTrain system's winter performance in the evaluation of Liberty's proposal, in the Reply Memorandum Liberty largely relies instead on allegations that the Port Authority retroactively downgraded Liberty's proposal. Furthermore, Liberty alleges substantial new facts in the Opposition Memorandum surrounding the RFP process and the Port Authority's actions regarding Liberty's proposal.

The parties' ability to raise new issues and arguments, and to allege new facts in a reply memo is largely circumscribed. Generally, "[t]he function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion." *Dannasch v Bifulco*, 184 A.D.2d 415, 417 [1st Dept 1992]; *see also USAA Fed. Sav. Bank v. Calvin*, 145 AD3d 704, 706 [2nd Dept 2016] (holding that reply papers including new arguments, new grounds, and new evidence for a motion were not properly before the court). But a court is not prohibited from considering a new *legal* argument presented in a reply brief. *See Eujoy Realty Corp. v Van Wagner Communications, LLC*, 22 NY3d 413, 422 [2013].

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW          Page 6 of 18
JERSEY ET AL
Motion No.  001 002 003

6 of 18

Therefore, the Court will only consider the issues and facts raised in the original pleadings and any accompanying affidavits, along with any new *legal* arguments raised by Liberty. This Court will, however, not consider the new issues raised and alleged facts presented in Liberty's Opposition Memorandum that are not supported by the original pleadings.

## II: The Public Records Requests

There are two document requests at issue here (the December 19 Request and the December 29 Request), along with their respective appeals and denials of the appeal. Liberty alleges that the Port Authority did not issue their denials, either of the requests or the appeals, in accordance with the Port Authority's Public Records Access Policy. Liberty argues that these denials were errors of law, arbitrary and capricious, and abuses of discretion. They further argue that the Court is able on this basis to compel the Port Authority to "produce all documents regarding the RFP and evaluation process." Liberty makes these claims in the First Cause of Action under the N.Y. Public Officer's Law and the Port Authority's Public Records Access Policy. Because concurrently with the petition Liberty has filed a motion for expedited discovery, Liberty acknowledges that if that motion is granted, this portion of Liberty's claim will be rendered moot.

The Port Authority opposes the petition on the grounds that there is no basis in law for Liberty's claim. The agency alleges that the December 18 requests were denied because the request was cut off at the ends and Liberty did not resubmit on being advised that the request was unreadable. They also argue that the December 29 request was overly broad, and that while Liberty did purport to modify the request, some documents could not be produced because the Port Authority was not aware of their existence and others could not be produced as they were exempt from disclosure under the Public Officers Law. Finally, the Port Authority argues that

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Motion No.  001 002 003**

**Page 7 of 18**

7 of 18

because they have voluntarily produced some documents after the contract with Doppelmayr was finalized, Liberty's request is moot.

II.A: Standard of Review for the Claims Regarding the Records Requests

The First Cause of Action alleges violations of the New York Public Officers Law and the Port Authority's Public Records Access Policy. It is an Article 78 challenge to the administrative decisions by the Port Authority to deny Liberty's FOIL requests for certain sets of documents. Liberty seeks these denials vacated as arbitrary and capricious and an order compelling the Port Authority to hand over the requested documents. As the Port Authority points out in their memorandum of law, this is not precisely the correct standard of review that the Court would apply to the alleged Public Officers Law violation.

When the issue at hand is whether a particular document is exempt from disclosure under FOIL, the "oft-stated standard of review in CPLR Article 78 proceedings, i.e., that the agency's determination will not be set aside unless arbitrary or capricious or without rational basis, is not applicable. Rather, the person resisting disclosure must prove entitlement to one of the exceptions." *Capital Newspapers Div. of Hearst Corp. v. Burns,* 109 AD2d 92, 94 [3rd Dept 1985]. For public policy reasons, the statutory exemptions from the disclosure requirement are "to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption." *Gould v New York City Police Department*, 89 NY2d 267, 275 [1996]. Furthermore, "only where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be withheld."

Therefore, to succeed on their petition Liberty must have established that the Port Authority has not themselves met the standard of establishing that they are entitled to one of the disclosure exceptions. This Liberty cannot do, for the reasons given below.

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 8 of 18

8 of 18

II.B: The Argument that the Port Authority Failed to Comply with the Public Records Access Policy Fails as a Matter of Plain Reading

Liberty argues that the Port Authority's denial of their records requests was in violation of their own Public Records Access Policy and was therefore arbitrary and capricious. Specifically, Liberty alleges that the Port Authority acted in an arbitrary and capricious manner by not responding to the requests in the time stated in the Policy. The Public Records Access Policy explicitly states in Section 5(d) that a "failure to comply with the time limitations described herein shall constitute a denial of a request" and Section 6(c) contains a similar provision for the consideration of appeals. The parties dispute whether or not the Port Authority actively responded to the December 18 records request. Either way, on the facts as alleged by Liberty, the requests and appeals were (at least procedurally) denied in proper accordance with the Public Records Access Policy. There was no error of law affecting the Port Authority's actions as regards the Public Records Access Policy nor were the actions arbitrary and capricious, as they were in line with the stated policy.

II.C: Liberty Has Failed to Show that the Records Request Denials Were Invalid Under the Public Officers Law § 87(2)(c)

Liberty alleges that the Port Authority's lack of disclosure of certain documents as exempt from the Public Officers Law, both before and after the filing of the verified petition, are invalid. The Port Authority contends that the original requests were validly denied as overbroad and as requesting material exempted under Public Officers Law § 87(2)(c) and (g). The Port Authority argues that at the time that Liberty originally made the requests, the documents relating to the RFP process and Doppelmayr fell squarely under an exception to the Public Officers Law as relates to ongoing contracts. Public Officers Law § 87(2)(c) exempts documents

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW          Page 9 of 18
JERSEY ET AL
Motion No.  001 002 003

9 of 18

that "if disclosed would impair present or imminent contract awards or collective bargaining negotiations."

At the time Liberty made the requests, it is undisputed that the contract with Doppelmayr was not finalized. The Port Authority argues that disclosing the requested documents at that time would impair both the Doppelmayr contract and any future contract with another proposer if the Doppelmayr contract failed to go through. This is a rational basis for the decision and the documents request clearly fall squarely in a stated exception to the disclosure requirement at the time the request was made. Liberty's petition cannot succeed on these grounds.

II.D.: An Order Compelling Production of Documents Previously Protected under Public Officer Law § 87(2)(c) Would be Premature as There Has Been No Final Agency Action

In between the filing of the petition and the Port Authority's filing of the present motion, the Port Authority has released certain documents to Liberty on the grounds that the contract with Doppelmayr has been finalized and in a "show of good faith" and that the reason Liberty has not received those documents is because Liberty has failed to agree to incur the production costs pursuant to Public Officers Law §87(1)(b) and (c). Liberty, however, contends in their reply papers that the Port Authority is impermissibly withholding public records from them, and that some of the records voluntarily released were impermissibly redacted. The Court will consider the Port Authority's original actions in denying Liberty's document requests as stated in the petition.

The verified petition's request for the Court to compel disclosure bases the grounds for that request on an allegation that the Port Authority's denial of the original document request was arbitrary and capricious. Because the denial was not arbitrary and capricious when it was

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 10 of 18

10 of 18

made, there are no grounds for the Court to compel disclosure of documents that when requested clearly fell under an exception to the Public Officers Law.

Now that the Public Officers Law § 87(2)(c) exception no longer applies because the contract with Doppelmayr has been finalized, Liberty is free to make a FOIL request for those documents. For the Court to issue an order compelling the Port Authority to disclose those documents would be premature at this time because there has been no official FOIL request since the contract was finalized and the exception ceased to apply to the Doppelmayr documents requested. The fact that the Port Authority has volunteered to release some documents to Liberty does not alter the fact that their original actions in denying the request were valid. As established above, the agency's actions in withholding the documents prior to the contract being finalized clearly fell within a stated exception to the Public Officers Law.

II.E: Liberty Has Failed to Show that the Records Request Denials Were Invalid Under the Public Officers Law § 87(2)(g)

The Port Authority has shown that the requested documents that have not been disclosed to Liberty fall neatly under the § 87(2)(g) exception. Liberty objects to the Port Authority having "not produced any communications between its evaluators." The Port Authority argues that the requested documents, including documents such as "various proposal review evaluation sheets", fall under the § 87(2)(g) exception and were therefore not disclosed. Public Officers Law § 87(2)(g) exempts from disclosure "inter-agency or intra-agency materials which are not: (i) statistical or factual tabulations or data; (ii) instructions to staff that affect the public; (iii) final agency policy or determinations; (iv) external audits, including but not limited to audits performed by the comptroller and the federal government."

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 11 of 18

11 of 18

Communications between evaluators, to the extent that they do not consist of statistical or factual tabulations or data, are by their nature inter-agency materials exempt from disclosure. The purpose of the § 87(2)(g) exception is to "permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure." *Miller v New York State DOT*, 58 AD3d 981, 984 [3rd Dept 2009]. It is precisely these opinions that Liberty wants the Port Authority to disclose. The communications between evaluators fall squarely in the inter-agency exception and therefore are exempt from disclosure. Liberty's first cause of action in its Article 78 petition cannot succeed.

## III: Attorneys' Fees

Alongside the claim for records, Liberty has requested the Court order attorneys' fees assessed against the Port Authority pursuant to N.Y. Public Officers Law § 89(c). Because Liberty has not substantially succeeded on their petition and because there was a rational basis for the Port Authority's actions, the request for attorneys' fees cannot succeed.

## IV: The Evaluation of Liberty's Proposal was Rational and Not Arbitrary and Capricious

At the heart of this litigation is the Port Authority's decision to award the AirTrain contract to Doppelmayr over Liberty. Liberty is seeking an evidentiary hearing pursuant to CPLR § 7804(h) to determine outstanding factual issues followed by an order from this Court vacating the Port Authority's denial of Liberty's Protest on the grounds that the decision was arbitrary and capricious and an abuse of discretion. Liberty argues that the decision to uphold the protest decision and thereby award the contract to Doppelmayr was arbitrary and capricious for two reasons: 1) the Port Authority went outside the RFP to evaluate Liberty only and 2) the Port Authority improperly evaluated Liberty's price bid. Specifically, Liberty argues that the Port Authority impermissibly used outside criteria relating to the current system's performance when

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003
Page 12 of 18

12 of 18

evaluating Liberty's bid and that the Port Authority improperly added additional costs to Liberty's price bid. Both of these arguments fail, as will be discussed below, because the Port Authority's actions in both instances was rational and supported by the record. Liberty has failed to show that the Port Authority went outside the RFP to evaluate Liberty's proposal and Liberty has not shown that the evaluation of Liberty's price bid was improper or against the RFP guidelines. Because these were the two reasons that Liberty proposed in the verified petition as to why the Doppelmayr award was improper, the second cause of action fails.

IV.A: The Alleged Outside Evaluation of Liberty's Proposal Is Not Supported by Documentary Evidence.

Liberty alleges in their petition that the Port Authority went outside the guidelines of the RFP and hinted to Liberty at the debriefing that they had used current winter weather experiences with the Alstom AirTrain system to evaluate Liberty's proposal. These allegations are stated both in the Second Cause of Action, ¶¶ 81, 82 and in the Factual Background, ¶ 27 of the Verified Petition, but are not supported by any sworn affidavits or other evidence.

The Port Authority denies these allegations in its memorandum of law in support of the current motion to dismiss. In support, the Port Authority offers documentation and a sworn affidavit from its Senior Program Director attesting to the fact that the RFP Evaluation Criteria explicitly addresses winter weather conditions in several places. The sworn affidavit of Ralph D'Apuzzo states that D'Apuzzo was the Port Authority representative at the debriefing in question and that at no time was current weather operations of the AirTrain used in evaluating Liberty's proposal. D'Apuzzo states that the current operation in winter weather was only used to highlight why the Port Authority considered it an important criterion for the proposals to

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW       Page 13 of 18
JERSEY ET AL
Motion No.  001 002 003

13 of 18

address. D'Apuzzo attaches to his sworn affidavit a debriefing memorandum used in the conference stating essentially the same thing.

In New York, failure to comply with an RFP's evaluation criteria or considering criteria not specified in the bid request is considered arbitrary and capricious. *Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast*, 17 NY3d 136, 144 [2011]. But the facts as supported by documentary evidence clearly show that the Port Authority complied with the RFP evaluation criteria as regarding Liberty's technical proposal and weather concerns. Here, Liberty cannot show that that the Port Authority went outside the RFP guidelines in evaluating Liberty's proposal.

IV.B: The Evaluation of Liberty's O&M Price

Liberty alleges in their petition that the Port Authority's cost proposal evaluation of Liberty's O&M pricing was arbitrary and capricious. Specifically, Liberty argues in ¶ 92 that the Port Authority "improperly added additional costs to Liberty's O&M price during the evaluation, or otherwise improperly evaluated Liberty's O&M price by combining a subjective evaluation with a comparison to an undisclosed baseline." The costs Liberty contends were added to their proposal amounts to $42 million. Liberty supports this contention by alleging in ¶ 91 that certain statements were made to Liberty by Port Authority expressing dissatisfaction with Liberty's proposed pricing. Liberty has also attached a sworn affidavit from their counsel Kodey M. Haddox which has attached certain documents released by the Port Authority that Liberty contends supports their argument that at one point $42 million was added to their price proposal. Ultimately, Liberty argues that the Port Authority did not establish that Doppelmayr was the "best value" given the price differences between the Liberty bid and the Doppelmayr bid.

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 14 of 18

14 of 18

[* 14]

The Port Authority argues that they had "legitimate concerns" about Liberty's pricing, and that they had "significant reservations that Petitioner could service the contract with labor rates significantly under union rates." In D'Apuzzo's sworn affidavit in support of the motion to dismiss, he states that, alongside significant technical concerns with Liberty's proposal, Liberty's proposed staffing levels were "not realistic" and that there were significant concerns with their O&M labor pricing. In response to the various significant concerns with the Liberty pricing, D'Apuzzo states in his affidavit that the Port Authority estimated an O&M risk factor with Liberty's bid of $42 million. But D'Apuzzo states, and has attached slides as Exhibit A, that this additional $42 million was not added to Liberty's proposal in the final presentation to the Executive Committee.

The parties disagree on whether or not Liberty fully responded to requests for clarification on their O&M price, with Liberty contending that they "fully responded" to all requests. In response, the Port Authority argues, and attaches excerpts from Liberty's responses, that Liberty simply responded to certain requests for price and staffing clarification with comments that the information sought was proprietary.

The D'Apuzzo affidavit in support of the motion to dismiss and attached RFP guidelines concerning the Best Value process make it explicitly clear that the party with the most favorable price proposal is not automatically the Best Value. The guidelines, attached as Exhibit 1 to the D'Apuzzo affidavit, clearly read "[t]o determine Best Value the Port Authority may conduct a price-technical tradeoff whereby the Port Authority may, in its best interest, select as the Preferred Proposal a Proposal that does not offer the most favorable Price Proposal nor is the highest technically rated Proposal." Furthermore, the Port Authority has attached the relevant RFP guidelines concerning the staffing levels and local hiring rates that Liberty's proposal was

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Motion No.  001 002 003**

**Page 15 of 18**

15 of 18

[* 15]

evaluated against. Ultimately, it is clear that the Port Authority's price valuation of Liberty's proposal was rational and not arbitrary and capricious.

### V: Liberty's Motion for Expedited Discovery Fails

Simultaneous with the verified petition, Liberty filed a motion for expedited discovery. This motion fails for the reasons given below.

### V.A.: Standard of Review for Discovery in an Article 78 Proceeding

In an Article 78 proceeding, discovery is only available by leave of the court. CPLR § 408. Generally, "[d]iscovery is disfavored in a special proceeding." *Matter of the People of the State of New York v. Northern Leasing Sys., Inc.*, 193 AD3d 67, 74 [1st Dept 2021]. Such leave should only be granted if there is a "showing that the discovery sought was likely to be material and necessary to the prosecution or defense of this proceeding." *Stapleton Studios, LLC. v City of New York*, 7 AD3d 273, 274 [1st Dept 2004].

Pertinent criteria for consideration of a request for discovery in a summary proceeding under CPLR § 408 "include, *inter alia*, (1) whether the petitioner has asserted facts to establish a cause of action; (2) whether a need to determine information directly related to the cause of action has been demonstrated; (3) whether the requested disclosure is carefully tailored so as to clarify the disputed facts; (4) whether any prejudice will result; and (5) whether the court can fashion or condition its order to diminish or alleviate any resulting prejudice." *Lonray, Inc. v Newhouse*, 229 A.D.2d 440, 440-41 [2nd Dept 1996].

### V.B.: The Court Will Not Grant Discovery for this Article 78 Proceeding

Liberty argues that discovery is required in this proceeding because the Port Authority has "failed to produce a significant amount of documents regarding the RFP process" and that "[w]hat documents have been produced have been heavily redacted." The Port Authority argues

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL**
**Motion No.  001 002 003**                                           **Page 16 of 18**

16 of 18

that discovery is not needed in this proceeding because the Port Authority has already disclosed what documents were requested that do not fall under an exception to the Public Officers Law.

The Court is not convinced that discovery is needed in this proceeding. Liberty has requested certain documents from the Port Authority under FOIL. The Port Authority disclosed some documents and withheld others as falling under a FOIL exception. Liberty disagrees with that assessment and now moves for discovery, arguing that the different disclosure standards for discovery are needed in order for Liberty to be assured that the withheld documents do in fact fall under a Public Officers Law exception. Liberty is arguing in a circular fashion that material excepted from disclosure under FOIL should be disclosed to them under the CPLR discovery standards so that Liberty can assess whether the FOIL exception applies. Essentially, this is an attempt to force discovery in order to circumvent the Public Officers Law disclosure exceptions and requirements. This is further borne out by Liberty's admission in their verified petition that should the Court grant their request to compel disclosure under FOIL of the requested documents, this present motion for expedited discovery is moot.

Moreover, Liberty here has no grounds for an order deeming the original records requests arbitrary and capricious nor do they have grounds for an order declaring the awarding of the contract to Doppelmayr void. The Port Authority's actions in denying the documents request at the time the request was made and in awarding the contract to Doppelmayr had a rational basis and was not arbitrary or capricious. Accordingly, it is hereby

ADJUDGED that the petition (motion # 001) is denied; and it is further

ADJUDGED that the motion for expedited discovery (motion # 002) is denied; and it is further

ORDERED that the motion to dismiss the petition (motion # 003) is granted.

**151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL** **Page 17 of 18**
**Motion No.  001 002 003**

[* 17]

17 of 18

20241008092652LFRANK8225B7246A184E2C8F46B7BB6DB27E2A

**10/8/2024**
**DATE**

_____
**LYLE E. FRANK, J.S.C.**

CHECK ONE:  [X] CASE DISPOSED    [ ] NON-FINAL DISPOSITION

[ ] GRANTED  [X] DENIED  [ ] GRANTED IN PART  [ ] OTHER

APPLICATION:  [ ] SETTLE ORDER  [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

151814/2024   LIBERTY MOBILITY LINK vs. PORT AUTHORITY OF NEW YORK AND NEW JERSEY ET AL
Motion No.  001 002 003

Page 18 of 18

18 of 18